MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
**THE702FIRM INJURY ATTORNEYS**
8335 West Flamingo Road
Las Vegas, Nevada 89147
Telephone:     (702) 776-3333
Facsimile:     (702) 505-9787
*E-Mail:        service@the702firm.com*

NATHANIEL L. FOOTE, ESQ.
*(pro hac vice motion forthcoming)*
ASHLEY VENTRILLO, ESQ.
*(pro hac vice motion forthcoming)*
J. ALEXANDER MARCINKO, ESQ.
*(pro hac vice motion forthcoming)*
**ANDREOZZI + FOOTE**
4503 North Front Street
Harrisburg, PA 17110
Telephone:     (717) 525-9124
Facsimile:     (717) 525-9143
*E-Mail:        alex@vca.law*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| M.L., and C.L., | Case No. : |
| Plaintiff, | Judge: |
| vs. | |
| BOYD GAMING CORPORATION; CANNERY HOTEL AND CASINO, LLC d/b/a CANNERY CASINO & HOTEL; STATIONS CASINOS LLC d/b/a SANTA FE STATION HOTEL AND CASINO; and ROE CORPORATIONS I-X | **COMPLAINT HUMAN TRAFFICKING under NRS § 41.13965, NRS § 41.1399, and 18 U.S.C. § 1595** |
| Defendants. | |

Plaintiffs M.L., and C.L., by and through their attorneys, MICHAEL C. KANE, ESQ.,

BRADLEY J. MYERS, ESQ., and JOEL S. HENGSTLER, ESQ. of THE702FIRM and J.

ALEXANDER MARCINKO, ESQ., of ANDREOZZI + FOOTE, states:

//

**INTRODUCTION**

1. This action for damages is brought by Plaintiffs, survivors of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. Sex trafficking is defined under 22 U.S.C. § 7102 (11) as "[t]he recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act, in which the commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such an act has not attained 18 years of age."

3. Plaintiffs meet the definition of a sex trafficking victim, induced by force, fraud, and coercion by a Trafficker to engage in commercial sex at the subject hotel, by being psychologically and physically prohibited from escape by a Trafficker, or alternatively, was a minor at the time of the trafficking.

4. The Trafficking Victims Protections Reauthorization Act ("TVPRA") provides a civil remedy for victims of a violation of the act.

5. Section 1595 of the TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the trafficker (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees." 18 U.S.C. § 1595.

///

///

///

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

**PARTIES**

6. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiffs name and address are not contained herein protect the safety, privacy and identity of sex trafficked victim(s). Nationwide similarly situated plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

7. Plaintiff M.L. is currently a resident of New Mexico.

8. Plaintiff M.L. was born in 1975.

9. Plaintiff C.L. is currently a resident of Colorado.

10. Plaintiff C.L. was born in 1998.

11. At all times relevant and material, Defendant Boyd Gaming Corporation is a Nevada corporation based in Paradise, Nevada.  It owned and operated The Cannery Casino & Hotel located at 2121 E Craig Rd, North Las Vegas, NV 89030 at all relevant times.

12. At all times relevant and material, Defendant Cannery is a Nevada Limited Liability Company that may be served through its registered agent, Corporation Service Company, at 112 North Curry Street, Carson City, Nevada, 89703.

13. Defendant Cannery was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as Cannery Casino & Hotel, located at 2121 E Craig Rd, North Las Vegas, NV 89030, during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiffs was sex trafficked on said premises.

14. During the relevant period, Defendant Cannery was operator of the subject aforesaid premises.

15. Defendants Boyd Gaming Corp., Cannery Casino & Hotel, and Cannery collectively hereinafter will be referred to as ("Defendant Cannery or Cannery").

16. At all times relevant and material, Defendant Station Casinos is a Nevada limited liability company who may be served at their principal place of business, located at 1505 S. Pavilion Center Dr., Las Vegas, NV, 89135.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

17. Defendant Station Casinos was a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the subject premises and subject hotel, doing business as the Santa Fe Station Hotel and Casino at 4949 N. Rancho Dr, Las Vegas, NV 89130, during the relevant period, and prior thereto, and as such responsible for the subject hotel during the time period Plaintiffs was sex trafficked on said premises.

18. During the relevant period, Defendant Station Casinos was operator of the subject aforesaid premises.

19. Defendants ROE CORPORATIONS I–V are unidentified business entities that were in some way responsible for employee hiring, training, supervision, retention, or discipline during the relevant period.

20. Defendants ROE CORPORATIONS VI–X are unidentified business entities that are successors-in-interest to Defendants or otherwise assumed liability in this matter.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

22. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND ON TRAFFICKING

23. A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

24. The hospitality industry is a major life source of the human trafficking epidemic

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

both in the U.S. and abroad[1]. The United Nations,[2] international non-profits,[3] and the U.S. Department of Homeland Security,[4] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels.

25. In 2004, End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for its hotel name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

26. Further, nationwide campaigns have recognized the issue of human trafficking in

---

1 Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3 /.

2 *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and analysis/tip/2021/GLOTiP_2020_15jan_web.pdf /. See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html /.

3 The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

4 Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry /; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf /.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign5 and domestically in 2010 with the Department of Homeland Security's Blue Campaign.6

27. These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

28. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be more vigilant and proactive in preventing this conduct.

29. Years before Plaintiffs was trafficked, Defendants knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking.

30. By 2012, training guides and videos were available through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

### SEX TRAFFICKING AT CANNERY CASINO & HOTEL

31. As it pertains to the Defendant Cannery, Plaintiffs were sex trafficked at the aforesaid hotel, owned and operated by Defendant, by her Trafficker in 2014 and through and inclusive of 2022.

32. Sex trafficking occurred at this subject hotel, upon information and belief, prior to Plaintiffs' trafficking.

33. Defendant Cannery knew or should have known that Plaintiffs was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

---

5 *The Blue Heart Campaign,* UNITED NATIONS (2022), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime /.

6 *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone /.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

34.     As a hotel owner and hotel operator, Defendant Cannery controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiffs was sex trafficked.

35.     Before and during the relevant period, Defendant Cannery failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

36.     Due to the involvement and affirmative actions of Defendant Cannery (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiffs by her Trafficker on Defendant's premises in violation of the TVPRA, including, but not confined to, by:

a.     Defendant repeatedly rented rooms to Plaintiffs' Trafficker when Defendant knew or should have known said Trafficker was engaged in sex trafficking on Defendant's premises including as to Plaintiffs in violation of the TVPRA;

b.     Defendant associating with Plaintiffs' Trafficker in an effort to force her to serve their business objective;

c.     Defendant allowing commercial dealings with the aforesaid Trafficker (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

d.     Defendant's staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e.     Defendant actively advancing the sex trafficking operation of Plaintiffs' Trafficker by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiffs; and,

f.    Defendant were otherwise being actively involved and affirmatively enabling Plaintiffs' Trafficker and facilitating the venture's success, Plaintiffs was caused to be sex trafficked by her Trafficker on Defendant's premises in violation of the TVPRA.

37.    Before and during the relevant period, Defendant Cannery failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

38.    Defendant Cannery failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to Plaintiffs herein and in violation of the TVPRA.

39.    Had the Defendant Cannery timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiffs at the subject hotel would have been prevented or mitigated.

40.    Due to the failure of Defendant Cannery to timely and properly implement anti-trafficking policies and practices, Plaintiffs were repeatedly victimized and trafficked for sex on Defendant's premises in violation of the TVPRA.

41.    Defendant Cannery by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing P Plaintiffs severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiffs severe injury.

42.    Because of the foregoing conduct of Defendant Cannery, the Plaintiffs suffered severe and permanent injuries and damages, as outlined herein.

**SEX TRAFFICKING AT SANTA FE STATION HOTEL AND CASINO**

43.    As it pertains to the subject Defendant Station Casinos, Plaintiffs were sex trafficked at the aforesaid hotel, owned and operated by Defendant Station Casinos, by her Trafficker in 2014 and through and inclusive of 2022.

44. Sex trafficking occurred at this subject hotel, upon information and belief, prior to Plaintiffs' trafficking.

45. Defendant Station Casinos knew or should have known that Plaintiffs was a victim of a venture that involved sex trafficking by force, threat of force, fraud, or coercion.

46. As a hotel owner and hotel operator, Defendant Station Casinos controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiffs was sex trafficked.

47. Before and during the relevant period, Defendant Station Casinos failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

48. Due to the involvement and affirmative actions of Defendant Station Casinos (as owner and operator, and by its staff and employees while acting within the scope of their employment), in associating with, facilitating and enabling the undertaking of the sex trafficking of Plaintiffs by their Trafficker on Defendant's premises in violation of the TVPRA, including, but not confined to, by:

    a.    Defendant repeatedly rented rooms to Plaintiffs' Trafficker when Defendant knew or should have known said Trafficker was engaged in sex trafficking on Defendant's premises including as to Plaintiffs in violation of the TVPRA;

    b.    Defendant associating with Plaintiffs' Trafficker in an effort to force her to serve their business objective;

    c.    Defendant allowing commercial dealings with the aforesaid Trafficker (e.g., in the form of room rentals) to continue on the subject premises and to be reinstated for a profit motive;

    d.    Defendant's staff and employees acting as lookouts and informants, during the scope of their employment, for the benefit of the Trafficker so as to

alert the aforesaid Trafficker of police activity or similar type warning alerts, or otherwise failing to respond to clear signs of trafficking;

e. Defendant actively advancing the sex trafficking operation of Plaintiffs' Trafficker by knowingly facilitating and negligently facilitating the venture's activities, i.e., the sex trafficking of Plaintiffs; and,

f. Defendant was otherwise being actively involved and affirmatively enabling Plaintiffs' Trafficker and facilitating the venture's success, Plaintiffs were caused to be sex trafficked by her Trafficker on Defendant's premises in violation of the TVPRA.

49. Before and during the relevant period, Defendant Station Casinos failed to implement sufficient educational and training programs on sex trafficking within its business chain of command, as well as failed to implement policies for preventing, identifying, reporting, documenting, investigating, and stopping sex trafficking at the subject hotel.

50. Defendant Station Casinos failed to act upon the obvious and overt signs alerting them to the sex trafficking taking place at this subject hotel including as to Plaintiffs herein and in violation of the TVPRA.

51. Had the Defendant Station Casinos timely and properly implemented policies and procedures common and reasonably accepted in the hospitality industry concerning anti-trafficking, safety and security it is more likely than not that the injuries suffered by the Plaintiffs at the subject hotel would have been prevented or mitigated.

52. Due to the failure of Defendant Station Casinos to timely and properly implement anti-trafficking policies and practices, Plaintiffs were repeatedly victimized and trafficked for sex on Defendant's premises in violation of the TVPRA.

53. Defendant Station Casinos by its passive or active involvement and affirmative enabling of the subject trafficking was a proximate and competent cause and substantial factor in causing Plaintiffs severe injuries in this case including, but not limited to, her being the victim of sex trafficking, which has caused Plaintiffs severe injury.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

54. Because of the foregoing conduct of Defendant Station Casinos, the Plaintiffs suffered severe and permanent injuries and damages, as outlined herein.

### PLAINTIFFS' TRAFFICKER

55. During the relevant period, Plaintiffs were trafficked by their trafficker, Nathan Chasing Horse aka Nathan Chasing His Horse.

56. Plaintiffs' Trafficker held himself out as a prominent spiritual healer in the Lakota tribe.

57. Plaintiffs' Trafficker used his position within the Lakota tribe to exercise control over the Plaintiffs and others.

58. Plaintiffs' Trafficker used his position within the Lakota tribe to obtain compliance from Plaintiffs' and other to perform sex acts on others for his financial gain.

59. Plaintiffs' Trafficker told Plaintiffs that they were required to perform those sex acts as part of their faith as members of his sect of the Lakota tribe, which was known as The Circle.

60. Plaintiffs' Trafficker used physical abuse and the threat of physical abuse to further obtain compliance.

61. Plaintiffs' Trafficker used tactics of isolation to keep the people he trafficked, including Plaintiffs, from their families and friends or any aspect of the outside world, in efforts to keep them under his control.

62. Plaintiffs' Trafficker branded the Plaintiffs and other women he trafficked with a spider tattoo that would have been visible to Defendants' agents and employees.

63. On January 30, 2026, Plaintiffs' Trafficker was convicted Clark County, Nevada for charges stemming from his sex trafficking and sexual abuse of Plaintiffs.

64. On April 26, 2026, Plaintiffs' Trafficker was sentenced to life in prison for the above conviction.

///

///

## TRAFFICKING OF M.L. AT CANNERY

65. As it pertains to the Defendant Cannery, Plaintiff M.L. was sex trafficked at the aforesaid hotel, owned and operated by Defendant, by her Trafficker in 2014 and through and inclusive of 2022.

66. Plaintiff was required to follow her Trafficker throughout the Casino

67. Plaintiff was not permitted to speak to or make eye contact with Defendant's employees and/or agents.

68. Defendants' staff complied with the Trafficker's wishes and did not interact with Plaintiff.

69. Plaintiff looked tired and afraid while at Defendant's hotel.

70. Defendant's staff would interact with Plaintiff's Trafficker, including providing him with complimentary gifts to keep him at their hotel.

71. Plaintiff's Trafficker rented multiple rooms at a time while trafficking the Plaintiff in Defendant's hotel.

72. Plaintiff's Trafficker repeatedly rented rooms at Defendant's hotel in this manner.

73. While at the hotel, Plaintiff was forced to have sex with multiple sex buyers per stay.

74. Plaintiff's trafficker was paid by sex buyers to have sex with Plaintiff.

75. The number of sex buyers created noticeable traffic in and out of the Plaintiff's trafficker's room.

## TRAFFICKING OF M.L. AT SANTA FE STATION HOTEL AND CASINO

76. As it pertains to the subject Defendant, Plaintiff M.L. was sex trafficked at the aforesaid hotel, owned and operated by Defendant, by her Trafficker in 2014 and through and inclusive of 2022.

77. Plaintiff was required to follow her Trafficker throughout the Casino

78. Plaintiff was not permitted to speak to or make eye contact with Defendant's employees and/or agents.

79. Defendants' staff complied with the Trafficker's wishes and did not interact with Plaintiff.

80. Plaintiff looked tired and afraid while at Defendant's hotel.

81. Defendant's staff would interact with Plaintiff's Trafficker, including providing him with complimentary gifts to keep him at their hotel.

82. Plaintiff's Trafficker rented multiple rooms at a time while trafficking the Plaintiff in Defendant's hotel.

83. Plaintiff's Trafficker repeatedly rented rooms at Defendant's hotel in this manner.

84. While at the hotel, Plaintiff was forced to have sex with multiple sex buyers per stay.

85. Plaintiff's trafficker was paid by sex buyers to have sex with Plaintiff.

86. The number of sex buyers created noticeable traffic in and out of the Plaintiff's trafficker's room.

## TRAFFICKING OF C.L. AT CANNERY

87. As it pertains to the Defendant Cannery, Plaintiff C.L. was sex trafficked at the aforesaid hotel, owned and operated by Defendant, by her Trafficker in 2019 and through and inclusive of 2022.

88. Plaintiff was required to follow her Trafficker throughout the Casino

89. Plaintiff was not permitted to speak to or make eye contact with Defendant's employees and/or agents.

90. Defendants' staff complied with the Trafficker's wishes and did not interact with Plaintiff.

91. Plaintiff looked tired and afraid while at Defendant's hotel.

92. Defendant's staff would interact with Plaintiff's Trafficker, including providing him with complimentary gifts to keep him at their hotel.

93. Plaintiff's Trafficker rented multiple rooms at a time while trafficking the Plaintiff in Defendant's hotel.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

13

94. Plaintiff's Trafficker repeatedly rented rooms at Defendant's hotel in this manner.

95. While at the hotel, Plaintiff was forced to have sex with multiple sex buyers per stay.

96. Plaintiff's trafficker was paid by sex buyers to have sex with Plaintiff.

97. The number of sex buyers created noticeable traffic in and out of the Plaintiff's trafficker's room.

### TRAFFICKING OF C.L. AT SANTA FE STATION HOTEL AND CASINO

98. As it pertains to the subject Defendant Station Casinos, Plaintiff C.L. was sex trafficked at the aforesaid hotel, owned and operated by Defendant, by her Trafficker in 2019 and through and inclusive of 2022.

99. Plaintiff was required to follow her Trafficker throughout the Casino

100. Plaintiff was not permitted to speak to or make eye contact with Defendant's employees and/or agents.

101. Defendants' staff complied with the Trafficker's wishes and did not interact with Plaintiff.

102. Plaintiff looked tired and afraid while at Defendant's hotel.

103. Defendant's staff would interact with Plaintiff's Trafficker, including providing him with complimentary gifts to keep him at their hotel.

104. Plaintiff's Trafficker rented multiple rooms at a time while trafficking the Plaintiff in Defendant's hotel.

105. Plaintiff's Trafficker repeatedly rented rooms at Defendant's hotel in this manner.

106. While at the hotel, Plaintiff was forced to have sex with multiple sex buyers per stay.

107. Plaintiff's trafficker was paid by sex buyers to have sex with Plaintiff.

108. The number of sex buyers created noticeable traffic in and out of the Plaintiff's trafficker's room.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

## COUNT I: 18 U.S.C. § 1595 ("TVPRA")
### [M.L. v. CANNERY]

109.    Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant Cannery.

110.    At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

111.    Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

112.    As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendant.

113.    Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

114.    Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

115.    More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the Trafficker who directly violated § 1591(a)(1) - a criminal statute; (2) a beneficiary claim against the Trafficker who directly violated §1591(a)(2) - a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant.

116.    In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, Trafficker used various means to do so including but not limited to (a) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff; (b) Trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Trafficker's directives were not complied with; (c) psychological coercion;

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

15

(d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the Trafficker of Plaintiff to induce sex with sex buyers at the subject hotel.

117. Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her Trafficker (or at the direction of her Trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

118. Defendant rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

119. The rental of a hotel room constitutes a financial benefit from a relationship with the Trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

120. Plaintiff Trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

121. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Trafficker online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

122. Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

123. During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Trafficker had direct interaction with employee(s) and staff of Defendant by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendant to act as lookout(s)/informant(s) for Plaintiff's Trafficker, while acting in their scope of employment, so as to inform the Trafficker of police activity or other similar type alerts.

124. In this case, during the relevant period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Trafficker that violated the TVPRA.

125. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

126. Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit.

127. Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

128. By renting rooms to Plaintiff's Trafficker Defendant, the hotel owner and operator, was associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective.

129. The modus operandi of the Trafficker was to renew the room(s) rental daily.

130. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's Trafficker, in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

131. Plaintiff's Trafficker had prior commercial dealings with the subject hotel which the Trafficker and Defendant wished to reinstate for profit when Plaintiff's Trafficker repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

132. This Defendant had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

133. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

    a. constant foot traffic of sex buyers to the Trafficker's rented room(s) to have sex with trafficked victim(s);

    b. trafficked victim(s) would walk around hotel grounds sleep deprived, hygiene impaired, branded, and malnourished;

c.   suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s);

d.   inside the hotel room(s) rented by the Trafficker (or at the direction of the Trafficker) there was a suspicious bunch of people and suspicious items including condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

e.   Trafficker monitoring hotel hallway, door of room(s) and walking hotel perimeter;

f.   Trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;

g.   Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Trafficker,

h.   Plaintiff's room exhibited signs of commercial sex work,

i.   Loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

j.   Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff

k.   Overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendant, (4) Trafficker overtly asserting control over Plaintiff in common areas of the hotel in view and/or earshot of staff of Defendant (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room

l.   Other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

18

134. Defendant's staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

135. When being trafficked at the subject hotel, Defendant's staff witnessed and observed Plaintiff, Trafficker as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

136. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

137. Defendant was involved and affirmatively took actions as the hotel owner and operator on Defendant's subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendant repeatedly renting rooms to Plaintiff's Trafficker when Defendant knew or should have known said Trafficker was engaged in sex trafficking on Defendant's premises including as to Plaintiff in violation of the TVPRA, (b) Defendant associating with Plaintiff's Trafficker in an effort to force her to serve their business objective, (c) Defendant allowing commercial dealings with the aforesaid Trafficker to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendant acting as lookouts and informants, while in the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, (e) Defendant knowingly facilitating and/or negligently facilitating the Trafficker's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating their venture's success.

138. Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering

personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

139.    This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

140.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

141.    As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the TVPRA.

142.    Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT II: 18 U.S.C. § 1595 ("TVPRA")
### [M.L. v. SANTA FE STATION]

143.    Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant.

144.    At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

145. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

146. As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendant.

147. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

148. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

149. More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the Trafficker who directly violated § 1591(a)(1) - a criminal statute; (2) a beneficiary claim against the Trafficker who directly violated §1591(a)(2) - a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant.

150. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, Trafficker used various means to do so including but not limited to (a) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff; (b) Trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Trafficker's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the Trafficker of Plaintiff to induce sex with sex buyers at the subject hotel.

151. Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her Trafficker (or at the direction of her Trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

21

152.    Defendant rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

153.    The rental of a hotel room constitutes a financial benefit from a relationship with the Trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

154.    Plaintiff Trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

155.    In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Trafficker online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

156.    Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

157.    During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Trafficker had direct interaction with employee(s) and staff of Defendant by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendant to act as lookout(s)/informant(s) for Plaintiff's Trafficker, while acting in their scope of employment, so as to inform the Trafficker of police activity or other similar type alerts.

158.    In this case, during the relevant period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Trafficker that violated the TVPRA.

159.    Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

160.    Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit.

161.    Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

herein.

162. By renting rooms to Plaintiff's Trafficker Defendant, the hotel owner and operator, was associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective.

163. The modus operandi of the Trafficker was to renew the room(s) rental daily.

164. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's Trafficker, in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

165. Plaintiff's Trafficker had prior commercial dealings with the subject hotel which the Trafficker and Defendant wished to reinstate for profit when Plaintiff's Trafficker repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

166. This Defendant had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

167. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

    a. constant foot traffic of sex buyers to the Trafficker's rented room(s) to have sex with trafficked victim(s);

    b. trafficked victim(s) would walk around hotel grounds, sleep deprived, hygiene impaired, with visible bruising, and malnourished;

    c. suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s);

    d. inside the hotel room(s) rented by the Trafficker (or at the direction of the Trafficker) there was a suspicious bunch of people and suspicious items including condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

e.    Trafficker monitoring hotel hallway, door of room(s) and walking hotel perimeter;

f.    Trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;

g.    Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Trafficker,

h.    Plaintiff's room exhibited signs of commercial sex work,

i.    loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

j.    Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff

k.    overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendant, (4) Trafficker overtly asserting control over Plaintiff in common areas of the hotel in view and/or earshot of staff of Defendant (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room

l.    other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

168.    Defendant's staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

169.    When being trafficked at the subject hotel, Defendant's staff witnessed and observed Plaintiff, Trafficker as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

170. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

171. Defendant was involved and affirmatively took actions as the hotel owner and operator on Defendant's subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendant repeatedly renting rooms to Plaintiff's Trafficker when Defendant knew or should have known said Trafficker was engaged in sex trafficking on Defendant's premises including as to Plaintiff in violation of the TVPRA, (b) Defendant associating with Plaintiff's Trafficker in an effort to force her to serve their business objective, (c) Defendant allowing commercial dealings with the aforesaid Trafficker to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendant acting as lookouts and informants, while in the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, (e) Defendant knowingly facilitating and/or negligently facilitating the Trafficker's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating their venture's success.

172. Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

173. This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

25

a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

174.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

175.    As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the TVPRA.

176.    Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT III: 18 U.S.C. § 1595 ("TVPRA")
### [C.L. v. CANNERY]

177.    Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant.

178.    At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

179.    Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

180.    As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendant.

181.    Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

182.    Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

183.    More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the Trafficker who directly violated § 1591(a)(1) - a criminal statute; (2) a beneficiary claim against the Trafficker who directly violated §1591(a)(2) - a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant.

184.    In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, Trafficker used various means to do so including but not limited to (a) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff; (b) Trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Trafficker's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the Trafficker of Plaintiff to induce sex with sex buyers at the subject hotel.

185.    Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her Trafficker (or at the direction of her Trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

186.    Defendant rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

187.    The rental of a hotel room constitutes a financial benefit from a relationship with the Trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

188.    Plaintiff Trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

27

Plaintiff was being sex trafficked there in violation of the TVPRA.

189. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Trafficker online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

190. Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

191. During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Trafficker had direct interaction with employee(s) and staff of Defendant by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendant to act as lookout(s)/informant(s) for Plaintiff's Trafficker, while acting in their scope of employment, so as to inform the Trafficker of police activity or other similar type alerts.

192. In this case, during the relevant period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Trafficker that violated the TVPRA.

193. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

194. Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit.

195. Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

196. By renting rooms to Plaintiff's Trafficker Defendant, the hotel owner and operator, was associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective.

197. The modus operandi of the Trafficker was to renew the room(s) rental daily.

198. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's Trafficker, in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

199. Plaintiff's Trafficker had prior commercial dealings with the subject hotel which the Trafficker and Defendant wished to reinstate for profit when Plaintiff's Trafficker repeatedly rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

200. This Defendant had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

201. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

    a.    constant foot traffic of sex buyers to the Trafficker's rented room(s) to have sex with trafficked victim(s);

    b.    trafficked victim(s) would walk around hotel grounds sleep deprived, hygiene impaired, with visible bruising, and malnourished;

    c.    suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s);

    d.    inside the hotel room(s) rented by the Trafficker (or at the direction of the Trafficker) there was a suspicious bunch of people and suspicious items including condoms, lubricants, which was observed by housekeeping staff and in plain sight of housekeeping staff;

    e.    Trafficker monitoring hotel hallway, door of room(s) and walking hotel perimeter;

    f.    Trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;

    g.    Plaintiff soliciting for sex buyers on the hotel premises at the direction of

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

her Trafficker,

h.    Plaintiff's room exhibited signs of commercial sex work,

i.    loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

j.    Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff

k.    overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendant, (4) Trafficker overtly asserting control over Plaintiff in common areas of the hotel in view and/or earshot of staff of Defendant (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room

l.    other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

202.    Defendant's staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

203.    When being trafficked at the subject hotel, Defendant's staff witnessed and observed Plaintiff, Trafficker as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

204.    Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

205.    Defendant was involved and affirmatively took actions as the hotel owner and operator on Defendant's subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendant repeatedly renting rooms to Plaintiff's Trafficker when Defendant knew or should have known said Trafficker was engaged in sex trafficking on Defendant's premises including as to Plaintiff in violation of the TVPRA, (b) Defendant associating with Plaintiff's Trafficker in an effort to force her to serve their business objective, (c) Defendant allowing commercial dealings with the aforesaid Trafficker to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendant acting as lookouts and informants, while in the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, (e) Defendant knowingly facilitating and/or negligently facilitating the Trafficker's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating their venture's success.

206.    Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day,  while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

207.    This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

208.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

31

to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

209. As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's hotel in violation of the TVPRA.

210. Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT IV: 18 U.S.C. § 1595 ("TVPRA")
### [C.L. v. SANTA FE STATION]

211. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against the above-captioned Defendant.

212. At all relevant times, Plaintiff was involved in the staffing and operation of the subject hotel where Plaintiff was trafficked for sex.

213. Plaintiff is a "victim" of sex trafficking as protected under applicable provisions of the TVPRA.

214. As it pertains to this Plaintiff, Plaintiff was sex trafficked at the subject hotel owned and operated by Defendant.

215. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591.

216. Separately, § 1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking. See 18 U.S.C. §1595(a).

217. More specifically, § 1595 provides for three distinct causes of action: (1) a claim against the Trafficker who directly violated § 1591(a)(1) - a criminal statute; (2) a beneficiary

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

claim against the Trafficker who directly violated §1591(a)(2) - a criminal statute; and (3) a beneficiary claim against a civil Defendant who did not violate § 1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil Defendant.

218. In order to induce Plaintiff by force, fraud and coercion to engage in sex with sex buyers at the subject hotel, Trafficker used various means to do so including but not limited to (a) Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff; (b) Trafficker instilled in Plaintiff the fear of severe bodily injury and/or fear of death if Trafficker's directives were not complied with; (c) psychological coercion; (d) withholding Plaintiff's identifying document(s); and (e) other means of force, fraud and coercion used by the Trafficker of Plaintiff to induce sex with sex buyers at the subject hotel.

219. Defendant knowingly benefited from the sex trafficking of Plaintiff at the subject hotel by receiving payment for the room(s) rented by her Trafficker (or at the direction of her Trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA.

220. Defendant rented room(s) to individuals it knew or should have known were engaged in the sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

221. The rental of a hotel room constitutes a financial benefit from a relationship with the Trafficker sufficient to meet "financially benefitted" element of the §1595(a) standard.

222. Plaintiff Trafficker took proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for room(s) rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

223. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur (as Plaintiff was advertised by her Trafficker online) and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

33

224. Defendant participated in a venture by operating the subject hotel that rented rooms to individuals that Defendant, knew or should have known were involved in sex-trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

225. During the time Plaintiff was trafficked at the subject hotel, Plaintiff's Trafficker had direct interaction with employee(s) and staff of Defendant by means of paying, befriending, and/or compensating employee(s) and staff member(s) of said Defendant to act as lookout(s)/informant(s) for Plaintiff's Trafficker, while acting in their scope of employment, so as to inform the Trafficker of police activity or other similar type alerts.

226. In this case, during the relevant period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's Trafficker that violated the TVPRA.

227. Operating a hotel and renting out rooms is an enterprise involving risk and potential profit.

228. Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit.

229. Defendant operating the subject hotel and renting out rooms to Plaintiff's Trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

230. By renting rooms to Plaintiff's Trafficker Defendant, the hotel owner and operator, was associating with Plaintiff's Trafficker in an effort to force Plaintiff to serve their business objective.

231. The modus operandi of the Trafficker was to renew the room(s) rental daily.

232. A continuous business relationship existed between the subject hotel, its agents, employees and staff, and Plaintiff's Trafficker, in part, in that the hotel repeatedly rented rooms, and/or repeatedly renewed room rentals, to individual(s) they knew or should have known were involved in sex trafficking on the premises, including as to the Plaintiff.

233. Plaintiff's Trafficker had prior commercial dealings with the subject hotel which the Trafficker and Defendant wished to reinstate for profit when Plaintiff's Trafficker repeatedly

rented rooms and/or repeatedly renewed room rentals that were used for trafficking of victims including Plaintiff.

234. This Defendant had constructive and actual knowledge that the undertaking or enterprise violated the TVPRA as to the Plaintiff.

235. Defendant knew or should have known about the nature of the sex trafficking occurring at the subject hotel, including as they related to Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

    a.    constant foot traffic of sex buyers to the Trafficker's rented room(s) to have sex with trafficked victim(s);

    b.    trafficked victim(s) would walk around hotel grounds sleep deprived, hygiene impaired, with visible bruising, and malnourished;

    c.    suspicious individuals loitering outside the hotel room(s) when a sex buyer would enter a room(s);

    d.    inside the hotel room(s) rented by the Trafficker (or at the direction of the Trafficker) there was a suspicious bunch of people and suspicious items including condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

    e.    Trafficker monitoring hotel hallway, door of room(s) and walking hotel perimeter;

    f.    Trafficker shadowing Plaintiff (or having another shadow Plaintiff) in plain sight of hotel staff;

    g.    Plaintiff soliciting for sex buyers on the hotel premises at the direction of her Trafficker,

    h.    Plaintiff's room exhibited signs of commercial sex work,

    i.    loud noise and yelling emanating from room where sex trafficking of Plaintiff was occurring

    j.    Trafficker utilizing physical and verbal abuse on and as to Plaintiff and at times in plain sight and earshot of Defendant's staff

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

35

    k.    overt evidence that Plaintiff was being induced by force, fraud and coercion to have sex with sex buyers on the subject premises [e.g. (1) visible bruising (2) overt physical deterioration of Plaintiff, (3) physical and/or verbal abuse occurring in common areas of the subject hotel in view and/or earshot of staff of Defendant, (4) Trafficker overtly asserting control over Plaintiff in common areas of the hotel in view and/or earshot of staff of Defendant (5) intermittent screaming from room(s) where trafficking of Plaintiff occurred sufficiently loud to be heard by staff outside the room

    l.    other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

236. Defendant's staff witnessed and observed signs and indicators of sex trafficking including items set forth in the paragraph above.

237. When being trafficked at the subject hotel, Defendant's staff witnessed and observed Plaintiff, Trafficker as well as a frequent procession of sex buyers going in and out of the subject rented rooms, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

238. Plaintiff knows that individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

239. Defendant was involved and affirmatively took actions as the hotel owner and operator on Defendant's subject premises during the relevant time period to advance the objective of this undertaking by (a) Defendant repeatedly renting rooms to Plaintiff's Trafficker when Defendant knew or should have known said Trafficker was engaged in sex trafficking on Defendant's premises including as to Plaintiff in violation of the TVPRA, (b) Defendant associating with Plaintiff's Trafficker in an effort to force her to serve their business objective, (c)

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

36

Defendant allowing commercial dealings with the aforesaid Trafficker to continue on the subject premises and to be reinstated for a profit motive, (d) staff and employees of Defendant acting as lookouts and informants, while in the scope of their employment, for the benefit of the Trafficker so as to alert the aforesaid Trafficker of police activity or similar type warning alerts, (e) Defendant knowingly facilitating and/or negligently facilitating the Trafficker's activities, i.e., the sex trafficking of Plaintiff, and (f) in otherwise being actively involved and affirmatively enabling Plaintiff's Trafficker and facilitating their venture's success.

240.    Defendant's failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at this subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day,  while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply as well as all residual injuries.

241.    This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guests behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

242.    Plaintiff being sex trafficked at this subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked.

243.    As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at its hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

37

repeatedly at Defendant's hotel in violation of the TVPRA.

244. Because of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## COUNT V:
### NEGLIGENCE or PREMISES LIABILITY, GROSS NEGLIGENCE, AND RECKLESSNESS
### [ALL PLAINTIFFS v. ALL DEFENDANTS]

245. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

246. At all times relevant, Defendants owed a duty to protect Plaintiffs from harm while in the care of Defendants and/or Defendants' agents.

247. Defendants violated its duty, and was negligent, careless, grossly negligent, and/or reckless as follows:

    a.    By failing to establish adequate sex trafficking prevention policies, procedures, and practices;

    b.    By failing to make mandatory and adhere (and ensure adherence) to such policies, procedures, and practices;

    c.    By failing to retain, hire, train, and supervise agents/employees with regard to the prevention of sex trafficking;

    d.    By failing to adequately monitor and supervise the premises and/or Trafficker and Plaintiffs;

    e.    By failing to know and react to the risks of sexual trafficking inherent in its activities;

    f.    By failing to require sex trafficking training;

    g.    By failing to recognize the signs that Trafficker was a sex trafficker or that Plaintiffs were being sex trafficked;

    h.    By failing to report Trafficker to the appropriate authorities; and,

    i.    By violating the duties imposed upon them pursuant to the Restatement of

Torts, Second, §§ 314A, 315, 317, 323, 324A, 343, 344, & 371.

248. As a direct and proximate cause of Defendants' actions and omissions, and breach of the duties of reasonable care, Plaintiffs were injured, resulting in damages.

## COUNT VI: NRS 41.1399
### [ALL PLAINTIFF v. ALL DEFENDANTS]

249. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

250. The Defendants profited from Plaintiffs' trafficking in the form or room rentals, gambling, atm fees, room service, resort fees, wifi charges, and food and beverage purchases among other profits.

## COUNT VII:
### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### [ALL PLAINTIFFS v. ALL DEFENDANTS]

251. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

252. Defendants' intentional acts alleged above were so outrageous and extreme as to be intolerable in a civilized society, and through those acts, Defendants intentionally or recklessly inflicted severe emotional distress upon Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests judgment as follows:

a. All available compensatory damages for the described losses with respect to the above cause of action;

b. Past and future emotional distress;

c. Consequential and/or special damages;

d. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e. Disgorgement of profits obtained through unjust enrichment;

f. Restitution;

g. All damages allowable under the TVPRA;

THE702FIRM
ATTORNEYS AT LAW
8335 West Flamingo Road
LAS VEGAS, NEVADA 89147
PHONE: (702) 776-3333

h.  Reasonable and recoverable attorney's fees;

i.  Punitive damages with respect to each cause of action;

j.  Costs of this action; and

k.  Pre-judgement and all other interest recoverable

l.  Any other relief the Court or jury deems appropriate.


DATED this 28th day of April, 2026.

                              THE702FIRM INJURY ATTORNEYS

                              /s/ Michael Kane
                              _____
                              MICHAEL C. KANE, ESQ.
                              Nevada Bar No. 10096
                              BRADLEY J. MYERS, ESQ.
                              Nevada Bar No. 8857
                              JOEL S. HENGSTLER, ESQ.
                              Nevada Bar No. 11597
                              8335 West Flamingo Road
                              Las Vegas, Nevada 89147
                              Telephone:      (702) 776-3333
                              Facsimile:      (702) 505-9787
                              E-Mail: service@the702firm.com

                              NATHANIEL L. FOOTE, ESQ.
                              (pro hac vice motion forthcoming)
                              ASHLEY VENTRILLO, ESQ.
                              (pro hac vice motion forthcoming)
                              J. ALEXANDER MARCINKO, ESQ.
                              (pro hac vice motion forthcoming)
                              ANDREOZZI + FOOTE
                              4503 North Front Street
                              Harrisburg, PA 17110
                              Telephone:      (717) 525-9124
                              Facsimile:      (717) 525-9143
                              E-Mail: alex@vca.law

                              Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiffs by and through their attorneys of record, THE702FIRM and ANDREOZZI +

FOOTE, hereby demands a jury trial of all issues in the above matter.

DATED this 28th day of April, 2026.

THE702FIRM INJURY ATTORNEYS

*/s/ Michael Kane*

_____
MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
8335 West Flamingo Road
Las Vegas, Nevada 89147
Telephone:      (702) 776-3333
Facsimile:      (702) 505-9787
*E-Mail: service@the702firm.com*

NATHANIEL L. FOOTE, ESQ.
*(pro hac vice motion forthcoming)*
ASHLEY VENTRILLO, ESQ.
*(pro hac vice motion forthcoming)*
J. ALEXANDER MARCINKO, ESQ.
*(pro hac vice motion forthcoming)*
**ANDREOZZI + FOOTE**
4503 North Front Street
Harrisburg, PA 17110
Telephone:      (717) 525-9124
Facsimile:      (717) 525-9143
*E-Mail: alex@vca.law*

*Attorneys for Plaintiffs*